08 SEP 19 PH 3: 51

CLERK OF DISTRICT COURT
SOUTHERN DISTRICT OF IA

IN THE UNITED STATES COURT FOR THE
SOUTHERN DISTRICT OF IOWA – DAVENPORT DIVISION

| | |
|---|---|
| UNITED STATES of AMERICA, ex rel. TIMOTHY C. SCHULTHEIS, Relator,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF CLINTON, IOWA,<br><br>Defendant. | Case No. _3:08cv 120_<br><br>QUI TAM COMPLAINT UNDER THE FALSE CLAIMS ACT, 31 U.S.C. § 3729 et seq. |

# [FILED IN CAMERA UNDER SEAL PURSUANT TO 31 U.S.C. § 3730].

IN THE UNITED STATES COURT FOR THE
SOUTHERN DISTRICT OF IOWA – DAVENPORT DIVISION

| | |
|---|---|
| UNITED STATES of AMERICA, ex rel.<br>TIMOTHY C. SCHULTHEIS, Relator,<br><br>           Plaintiffs,<br><br>v.<br><br>CITY OF CLINTON, IOWA,<br><br>           Defendant. | Case No. _____<br><br><br>QUI TAM COMPLAINT<br>UNDER THE FALSE<br>CLAIMS ACT,<br>31 U.S.C. § 3729 et seq. |

Plaintiff Timothy C. Schultheis, as qui tam relator on behalf of the United States of America, for his claims against Defendant City of Clinton, Iowa states as follows:

1.      Plaintiff, Timothy C. Schultheis is, and was at all times material here, a resident and citizen of Clinton, Clinton County, Iowa.

2.      Defendant City of Clinton ("Clinton") is a municipal corporation organized and existing under the laws of the State Iowa, and located in the County of Clinton.

3.      Clinton, through its Fire Department, supplies ambulance and emergency medical services for which it bills and receives payment from the Medicare and Medicaid programs of the United States Government.

4.      Jurisdiction exists pursuant to 31 U.S.C. §§ 3730(b)(1) and 3732 because this action seeks remedies on behalf of the United States for violations of 31 U.S.C. § 3729 by Clinton.

5.      Venue exists in this District pursuant to 31 U.S.C. § 3732(a) because Clinton exists and transacts business in this District.

6.      The facts upon which this action is based are personally known to Plaintiff through his employment with Clinton's fire department.

7.      This action is brought on behalf of the United States to recover all damages, penalties and other remedies established by and pursuant to 31 U.S.C. §§ 3729 through 3733, and Plaintiff claims entitlement to a portion of any recovery obtained by the United States as qui tam plaintiff authorized by 31 U.S.C. § 3730.

8.      Clinton has entered into a contract or contracts with the United States for the purpose of obtaining reimbursement for ambulance and emergency medical services provided to patients covered by Medicare and Medicaid.

9.      Clinton, at the direction of its EMS Director, and under the supervision of its fire chief, has knowingly, deliberately or recklessly submitted false claims, records and statements to officials of the United States for the purpose of obtaining increased payments in connection with a series of claims for ambulance and emergency medical services.

10.      Clinton knowingly, deliberately or recklessly submitted all claims for ambulance and emergency medical services to Medicare and Medicaid classified as Advanced Life Support Level 1 Emergency (ALS-1 ER) services despite the fact that certain claims should have been classified as Basic Life Support (BLS) services.

11.      Specifically, Clinton submitted the following false claims:

### PATIENT A

On February 23, 2008, an ambulance dispatched for a depressed patient. Upon arrival, the patient was talking to police officers on scene. The patient walked down the steps of his apartment to the ambulance and seated himself on the cot. The patient stated he was depressed

2

and wanted to kill himself. The patient also stated that he had been drinking alcohol and snorting cocaine. The patient's vital signs were assessed and recorded and found to be within normal limits. The patient was asked if he wished to go to the hospital and he responded in the affirmative. The patient was transported to the emergency department and care was transferred to hospital staff. The level of care provided was BLS with no ALS-1 ER interventions or assessment required. Plaintiff correctly coded this call as BLS 298.9 Psychiatric/Behavioral (threat to self or others). Plaintiff received an email from Clinton's EMS director stating that the coding was incorrect and should be ALS 292.9 Psychiatric/Behavioral Condition Specific-abnormal mental status, drug withdrawal, which required disorientation or other withdrawal symptoms. Clinton improperly submitted this claim to Medicare or Medicaid for payment as an ALS-1 ER service.

### PATIENT B

On or about June 26, 2008, an ambulance dispatched for a fall victim. The ambulance arrived to find a woman seated on a chair stating that she had attempted to step over a chain and had fallen and landed on her butt. The patient did not hit her head or lose consciousness. She was concerned that she may have broken her hip. There was no shortening, rotation, disfigurement of the patient's leg or hip. The patient was assessed for potential spinal injury and was cleared based on protocol. The patient was able to move leg and bend knee without noticeable pain. The patient was asked if she felt she could stand and she said she could. The patient walked to the cot and was seated. The patient was secured to cot and loaded on the ambulance. The patient rated her pain in gluteal area as 3 on a 10 scale. The patient was placed on oxygen and vitals were assessed as within normal limits. The patient was transported to

3

hospital. The care provided was BLS, and should have been coded BLS 829.0 - other trauma, suspected fracture/dislocation. Clinton required its paramedics to code this and all falls ALS 518.5 - need to monitor airway. There was no medical need to monitor this patient's airway, and it was not done. Clinton improperly submitted this claim to Medicare or Medicaid for payment as an ALS-1 ER service.

<u>PATIENT C</u>

On or about August 21, 2008, an ambulance dispatched for patient with a laceration and bleeding. The ambulance arrived to find a 79 year old male patient with a superficial leg laceration. The patient stated that he scratched his leg with his fingernails and bleeding started. The patient had a very small, less than one cm superficial wound over a varicose vein on his lower leg. The bleeding was stopped with direct pressure and wrapped. The patient initially refused transport, however his wife insisted that he go. The patient walked to cot and was secured and loaded on the ambulance. The patient's vitals were assessed and oxygen was administered. This was clearly BLS level of care. Clinton required its paramedics to code this call as ALS 958.2 - other trauma, major bleeding. The proper coding was BLS 880.8 - penetrating extremity injury, isolated bleeding. Clinton improperly submitted this claim for payment to Medicare or Medicaid as an ALS-1 ER service.

<u>PATIENT D</u>

On June 20, 2008, an ambulance dispatched for a 17 year old male that needed transport from his doctor's office to the hospital. The ambulance arrived to find a very large 17 year old male in the parking lot with several police officers attempting to talk to the patient. The patient's mother stated that patient was mentally handicapped and became violent with her and the

4

patient's sister in a store parking lot. The mother drove to the doctor's office to get assistance. The doctor called 911 to get the patient transported to the emergency department. The patient has a history of striking care givers and law enforcement. The patient was coaxed to the ambulance by a police officer and was convinced to enter the ambulance under his own power. The patient was seated on cot, however, he would not allow crew to secure him or check vitals or administer any treatment. The mother rode to hospital in the back of the ambulance and talked to patient to keep him calm. The care provided was BLS, merely a transport to hospital. Clinton required coding as ALS292.9 Behavioral/Psychiatric. Clinton improperly submitted this claim to Medicare or Medicaid for payment as an ALS-1 ER service.

PATIENT E

In July 2008, an ambulance dispatched for fall victim at local nursing home. The ambulance arrived to find a 84 year old female patient on the floor sitting next to her bed. Patient was deaf and communicated with staff by writing on a white board. Staff stated that no one witnessed the fall. The patient stated that she slid out of bed and was too weak to get up. The patient was assessed and asked by writing on a white board if she had pain. The patient stated no pain, and that she did not fall, but slid off her bed and was not able to stand up with her walker on her own. The patient's vitals were assessed as within normal limits. The patient stated that she did not want to go the hospital, however, staff wanted her checked out. The patient's power of attorney holder felt she should be transported. The patient was loaded on cot, secured and transported. The ambulance crew provided BLS level of care. Clinton required the paramedics to code this call as ALS code 518.5 - need to monitor airway. There was no need to

5

monitor this patient's airway, and it was not done.  Clinton improperly submitted this claim to Medicare or Medicaid as an ALS-1 ER service.

PATIENT F

In August 2008, an ambulance dispatched for a spider bite.  The ambulance arrived to find a male patient of unknown age with what he called a spider bite on his arm.  The bite presented with an approximately 6cm swollen mound and redness on the arm.  The patient stated that bite itched and felt warm.  The patient was loaded in ambulance and his vitals were assessed as within normal limits.  Oxygen was administered and patient was transported to hospital.  The ambulance and crew provided BLS level of care with the proper code of BLS879.8.  Clinton required paramedics to code this call as ALS989.5 - animal bite or sting- potentially life or limb threatening.  The bite was not life or limb threatening.  Clinton improperly submitted this claim to Medieare or Medicaid for payment as an ALS-1 ER service.

12.     Plaintiff participated in each of the calls identified for patients A through E.  Plaintiff knows Clinton's claims for patients A through F were submitted to Medicare or Medicaid because Clinton receives a document from the hospital upon delivery of each patient that identifies the souree of payment.  Each of Patients A through F were indicated as Medicare or Medicaid patients.

13.     If a paramedic, such as Plaintiff, submits a call report to Clinton as BLS, Clinton, through the direction of its EMS Director, under the supervision of the fire chief, changes the code to ALS-1 ER for billing purposes and informs the paramedic by email, despite the fact that no ALS-1 ER level interventions or assessments were required.

14.     Clinton submitted claims for payment for ambulance and emergency medical

6

services to Medicare or Medicaid at the ALS-1 ER level in order to improperly receive a higher reimbursement from Medicare or Medicaid for each claim. Clinton would have received a lower payment per claim if they were properly submitted as BLS.

15.     Clinton received ALS-1 ER level reimbursement from Medicare and Medicaid on the false claims that should have been paid at the lower BLS level.

16.     At the time Clinton submitted each improper claim, its managing employees and agents knew the claims were false or acted with deliberate or reckless indifference of the truth, that the services provided did not justify billing at the ALS-1 ER level.

17.     In addition to the specific claims identified in paragraph 10, Clinton submitted additional false claims on a daily basis. Clinton submits every ambulance call as ALS-1 ER regardless of the level of assessment or service actually provided. Plaintiff seeks recovery for all falsely coded claims during the limitations period continued in 31 U.S.C. § 3731.

18.     On numerous occasions, Plaintiff complained to Clinton's EMS Director, and other supervisors within the fire department, that Clinton's ambulance and emergency medical services billing practices were fraudulent and that Plaintiff was highly concerned about the practices; yet the fraudulent practices continued.

19.     Plaintiff is the original source of the information supporting this action, and he voluntarily provided the information to the United States before commencing this action.

20.     The United States has been damaged by all of the above-mentioned misrepresentations and false claims because Clinton knowingly, deliberately and fraudulently received payment for each BLS level ambulance and emergency medical service at the higher ALS-1 ER reimbursement level.

7

Wherefore, the United States is entitled to damages from Clinton in accordance with the provisions of 31 U.S.C. §§ 3729 to 3733, including but not limited to a penalty of up to $11,000.00 for each false claim and treble the United State's actual damages, of which up to 30 percent should be paid to Plaintiff as relator. Additionally, Plaintiff is entitled to his attorneys' fees and costs, and such further relief as is appropriate in the premises.

Frank B. Harty, AT0003356
Benjamin P. Roach, AT0006588
NYEMASTER, GOODE, WEST
 HANSELL & O'BRIEN, P.C.
700 Walnut Street, Suite 1600
Des Moines, Iowa 50309
Telephone:    (515) 283-3100
Facsimile:    (515) 283-8045
fharty@nyemaster.com
bproach@nyemaster.com

ATTORNEYS FOR PLAINTIFF
RELATOR TIMOTHY SCHULTHEIS

8